## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHAWN MORISSETTE,

     Plaintiff,

v.

                              CASE NO.:

NAVIENT SOLUTIONS LLC,

     Defendant.

_____/

## **COMPLAINT**

1.      Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.      The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC),  in 2016 this number was 3,401,614 and in 2017 it was 4,501,967.[1]

3.      Navient Solutions, LLC robocalled the Plaintiff a mindboggling 2000 times.

4.      Navient Solutions, LLC has a corporate policy to robocall people thousands of times.

5.       "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm*

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years.

*Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6.      Plaintiff, Shawn Morissette, alleges Defendant, Navient Solutions, LLC, robocalled him more than 2000 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIED").

7.      Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8.      The TCPA was enacted to prevent companies like Navient Solutions, LLC from invading American citizens' privacy and prevent illegal robocalls.

9.      Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

2

10.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12.     Violations described in the Complaint occurred while Plaintiff was in Lakeland, FL.

## FACTUAL ALLEGATIONS

13.     Plaintiff is a natural person and citizen of the State of FL, residing in Weeki Wachee, FL.

14.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692a(3).

15.     Plaintiff is an "alleged debtor."

16.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17.     Defendant is a foreign limited liability company with its principle place of business in Wilmington, Delaware, and conducts business in the State of Florida.

18.     Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692a(6).

19.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

20.     Plaintiff is the regular user and carrier of the cellular telephone numbers at issue, (863) 398-5986/(863) 409-0991.

21.     Plaintiff was the "called party" during each phone call subject to this lawsuit.

22.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

23.     Defendant did not have the "express consent" of the Defendant to call his cell phone.

24.     "Express consent" is narrowly construed by the Courts.

25.     It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

26.     It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

27.     Defendant was put on notice Plaintiff did not want the Defendant contacting him.

28.     Defendant was told repeatedly that Plaintiff was going through several financial hardships and that he will start making payments again towards his education loans once his financial situation improved. The Defendant kept calling the Plaintiff saying that he has a debt that he has to pay ignoring the Plaintiff's explanations about his financial situation and requests to stop calling.[2]

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

4

29.     Defendant also called his former wife, father-in-law, and home several times looking for the Plaintiff to recover a student loan debt.

30.     Defendant did not have the express consent of the Plaintiff to call him on the accounts they called him on.

31.     Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

32.     Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

33.     Defendant made at least one call to (863) 398-5986/(863) 409-0991.

34.     Defendant made at least one call to (863) 398-5986/(863) 409-0991 using an ATDS.

35.     Defendant made at least ten (10) calls to (863) 398-5986/(863) 409-0991.

36.     Defendant made at least ten (10) calls to (863) 398-5986/(863) 409-0991 using an ATDS.

37.     Defendant made at least one hundred (100) calls to (863) 398-5986/(863) 409-0991.

38.     Defendant made at least one hundred (100) calls to (863) 398-5986/(863) 409-0991 using an ATDS.

39.     Defendant made at least three hundred (300) calls to (863) 398-5986/(863) 409-0991.

40.     Defendant made at least three hundred (300) calls to (863) 398-5986/(863) 409-0991 using an ATDS.

41.     Defendant made at least five hundred (500) calls to (863) 398-5986/(863) 409-0991.

42.     Defendant made at least five hundred (500) calls to (863) 398-5986/(863) 409-0991 using an ATDS.

43.     Defendant made at least one thousand (1,000) calls to (863) 398-5986/(863) 409-0991.

44.     Defendant made at least one thousand (1,000) calls to (863) 398-5986/(863) 409-0991 using an ATDS.

45.     Each call the Defendant made to (863) 398-5986/(863) 409-0991 in the last four years was made using an ATDS.

46.     Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

47.     Defendant has called other people's cell phones without their express consent.

48.     Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

49.     The calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

50.     Plaintiff repeatedly requested the Defendant to stop calling his cell phone, however, the Defendant continued to make calls.

51.     Defendant has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

6

52.     Plaintiff's conversations with the Defendant putting them on notice that they did not want more phone calls were ignored.

53.     Defendant has recorded at least one conversation with the Plaintiff.

54.     Defendant has recorded numerous conversations with the Plaintiff.

55.     Defendant has made approximately two thousand (2000) calls to Plaintiff's aforementioned cellular telephone number since in or about 2012 which will be established exactly once Defendant turns over their dialer records.

56.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

57.     Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

58.     By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

59.     Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

60.     Defendant's phone calls harmed Plaintiff by wasting his time.

61.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

62.     Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

63.     Defendant's corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

64.     Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

65.     Defendant has numerous other federal lawsuits against them alleging similar violations as stated in this complaint.  The Defendant has been sued civilly in Federal Court 360 times since 2014 (per PACER in March 2018).

66.     In the last 3 years, the Defendant has had 1736 complaints reported to the Better Business Bureau (BBB), of which 1275 of those complaints are classified as being related to "Billing/Collection Issues."[3]

67.     Since January 2015, Defendant has had 472 complaints classified under "communications tactics" filed against it with the Consumer Financial Protection Bureau (per cfpb.org in March 2018).

68.     Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

---

[3] *Navient, Reviews & Complaints, BETTER BUSINESS BUREAU,* https://www.bbb.org/delaware/business-reviews/loans/navient-in-wilmington-de-92002017/reviews-and-complaints

69.     Defendant never had the Plaintiff's expressed consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

70.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

71.     Defendant violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

72.     Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

73.     Plaintiff incorporates Paragraphs one (1) through seventy-two (72).

74.     Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

75.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

76.     Defendant, Navient Solutions, LLC repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

77.     As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

78.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Navient Solutions, LLC, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FDCPA)

79.     Plaintiff incorporates Paragraphs one (1) through seventy-two (72).

80.     At all times relevant to this action, Defendant is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

81.     Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

82.      Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

83.     Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FCCPA)

84.     Plaintiff incorporates Paragraphs one (1) through seventy-two (72).

85.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

86.     Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

87.     Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency even after Plaintiff explained to defendant that he was going through several financial hardships and that he will start making payments again towards his educations loans once his financial situation improved.   This frequency can reasonably be expected to harass the debtor or his family.

88.     Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

89.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## <u>COUNT IV</u>
### (Invasion of Privacy – Intrusion Upon Seclusion)

90.     Plaintiff incorporates Paragraphs one (1) through seventy-two (72).

91.     Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

92.     All of the calls made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

93.     Defendant's persistent autodialed calls to both his cellular phone and home telephone eliminated Plaintiff's right to be left alone.

94.     Defendant's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

95.     These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

96.     By calling both his home phone and cellular phone, Plaintiff had no escape from these collection calls either in his home or when he left the home.

97.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

98.     Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to both his cellular and home telephone after requests to stop is highly offensive to a reasonable person.

99.     Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

100.    As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT V
### (Intentional Infliction of Emotional Distress)

101.    Plaintiff incorporates Paragraph one (1) through seventy-two (72).

102.    The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

103.    It is beyond the pale of decency to robocall anybody 2000 times.

104.    The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because he could not stop the calls despite explaining that he was going through several financial hardships and that he wanted the harassing robocalls to end.

105.    To call somebody this amount of time is inhumane.

106.    It is utterly uncivilized to robocall someone 2000 times.

107.    If a person called another person 2000 times, the caller would most likely be in prison for criminal harassment.

108.    This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

109.    The calls to Plaintiff by Defendant are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant for punitive damages and such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

*s/ William "Billy" Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esq.
Florida Bar No.: 0098228
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
*Attorney for Plaintiff*